UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD A. RODRIGUEZ,

    Petitioner,

  v.

F.X. CHAVEZ, Warden,

    Respondent.

         No. C 11-0179 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2006, a Santa Clara County Court jury found petitioner and two co-defendants guilty of home invasion robbery, residential burglary, and aggravated assault. Consequent to the verdicts, petitioner was sentenced to 15 years-to-life in state prison. Petitioner was denied relief on state judicial review. This federal petition followed.

Evidence presented at trial shows that in 2003, petitioner, along with Alexander Diaz,[1] Joshua Herrera, and Alex Samaro, robbed at gunpoint Diaz's stepfather, Tom Martinez.

---

[1] Diaz was tried separately from the other three.

Martinez testified that petitioner, Diaz, and Samara threatened him with a sawed-off gun and knife, and that petitioner himself pointed a pistol at him. Martinez threw Diaz against the other two, ran to his bedroom, shut the door, pushed a dresser against it, and escaped into the backyard through a back door. Petitioner caught up with him and struck him. After the two wrestled for a bit, Martinez escaped and telephoned police (Ans., Ex. 14 at 6–7).

Martinez's account was corroborated by police, who had been surveiling Diaz because he was a suspect in an unrelated homicide (the "Olinder Park murder"). (Prior to the robbery, Martinez told Diaz's parole officer and a San Jose police officer that Diaz might be responsible for the Olinder Park murder.) On the night of the robbery, the police observed the four perpetrators drive to Martinez's house, and watched petitioner, Diaz and Samaro enter Martinez's apartment, while Hererra backed the car into an alley, and sat there with the car engine on. Soon after, officers saw the four men leave the apartment. The police later recovered from the co-perpetrators' residence a white safe (containing methamphetamine) that had been stolen from Martinez's apartment and two sawed-off shotguns. At Martinez's residence, they observed the dresser pushed in front of the bedroom door, which had shoe scuff marks on it and a broken lock (*id.* at 5–8).

As grounds for federal habeas relief, petitioner alleges that (1) his Confrontation Clause rights were violated; (2) the prosecution committed misconduct by presenting "crime evidence purely for its inflammatory and prejudicial effect"; (3) there was insufficient evidence to support the gang enhancement; (4) the trial court gave erroneous jury instruction with respect to the aggravated assault charge and trial counsel rendered ineffective assistance for failing to obtain the proper instructions; and (5) the sentence violates the Fifth Amendment prohibition against multiple punishment.

**STANDARD OF REVIEW**

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). A federal court may not grant a petition with respect to any claim that was

2

adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. (Terry) Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254 (d)(2). The federal court must presume as correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker*, 501 U.S. at 801–06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct an

"independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. *Ibid*.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## ANALYSIS

**1.    Confrontation Clause**

Petitioner claims that the use of (A) Diaz's statements to his mother and (B) Samaro's and Diaz's statements to each other violated his Confrontation Clause rights.

**A.    Diaz's Statements to his mother**

The police secretly taped a conversation Diaz had with his mother, Sonia Ramirez, while the two were in a police interview room. During this conversation, Diaz made statements inculpating petitioner, Samaro, and Herrera. A recording of this conversation was played for the jury. Diaz did not testify about these statements, or about anything else. After stating on the stand that he would not say anything about the case, the trial court ruled that Diaz was not available to testify. The trial court also ruled that the statements were nontestimonial and trustworthy (Ans., Ex. 14 at 23–24).

The state appellate court agreed that the statements were nontestimonial, and therefore were not subject to Confrontation Clause restrictions. More specifically, the state appellate court held that (1) neither speaker was acting as a witness, (2) the conversations lacked the formality and solemnity that characterizes testimony by witnesses, (3) the statements were not made to law enforcement personnel, (4) no structured questioning occurred, and (5) the speakers believed their conversation was private (*id.* at 19).

Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). While the Supreme Court has not articulated a comprehensive definition of

1  testimonial hearsay, it has said that "[w]hatever else the term covers, it applies at a
2  minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former
3  trial; and to police interrogations." *Id.* at 68.  When the Supreme Court has never squarely
4  addressed whether a particular type of statement is testimonial, a state court's admission of
5  such statement at trial as nontestimonial is not "contrary to" clearly established Supreme
6  Court precedent or an "unreasonable application" of *Crawford*, under 28 U.S.C. 2254
7  (d)(1).  *See Moses v. Payne*, 555 F.3d 742, 754–55 (9th Cir. 2009) (finding state court's
8  admission of victim's out-of-court statements to emergency room physician as
9  non-testimonial statements not contrary to clearly established federal law or unreasonable
10 application thereof, because Supreme Court had never "squarely addressed" whether
11 statements made to doctors for purposes of medical treatment and diagnosis were
12 testimonial).  Hearsay that is not testimonial, "while subject to traditional limitations upon
13 hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547
14 U.S. 813, 821 (2006); *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

15      The state appellate court reasonably determined that the statements were not
16 testimonial.  They do not fit under any recognized category of statements the Supreme
17 Court has designated as testimonial, i.e., statements made during police interrogations,
18 prior testimony at a preliminary hearing, before a grand jury, or at a former trial.  Rather
19 than being testimonial, Diaz's statements were part of a private conversation, made
20 apparently without thought that they would be used by law enforcement.  Because these
21 statements are not testimonial, they are not barred by the Confrontation Clause.
22 Accordingly, petitioner's claim fails.

23      Petitioner, however, also contends that the admission of the statements violated his
24 Confrontation Clause rights as they are articulated under *Bruton v. United States*, 391 U.S.
25 123 (1968).  Under that case, a defendant is deprived of his right of confrontation when a
26 facially incriminating confession of a nontestifying co-defendant is introduced at their joint
27 trial, even if the jury is instructed to consider the confession only against the co-defendant.
28 *Id.* at 126, 135–36.  *Bruton* is inapposite to the instant claim.  First, Diaz was not a co-

5

defendant at petitioner's trial.  Second, the confession in *Bruton*, unlike the statements made here, was testimonial, having been made to a law enforcement officer.

Furthermore, petitioner would not be entitled to relief even if the Confrontation Clause had been violated.  All Confrontation Clause claims are subject to harmless error analysis.  *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004).  In the context of reviewing a state court conviction under 28 U.S.C. § 2254, this of course means that relief is in order only if the admission at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Relief is precluded here by the strength of the evidence supportive of petitioner's guilt. Tom Martinez's unequivocal testimony about petitioner's action was corroborated by the surveillance team watching petitioner and his co-perpetrators, and by the physical evidence (the scuff marks on the door, the dresser against the bedroom door, the broken lock, the recovery of the white safe and shotgun).  Accordingly, petitioner's claim is DENIED.

### B. Diaz's and Samaro's Statements

Samaro and Diaz were placed together in a police interrogation room.  In their conversation, the pair acknowledged participating in the robbery, including the guns used and the methamphetamine the police found.  A record of the conversation, which had been secretly recorded, was played for the jury.  The state appellate court concluded that these statements, like the previous ones, were nontestimonial and reliable (Ans., Ex. 14 at 23–24).

This order concludes that the state appellate court's determination was reasonable, on the same grounds as listed above:  the statements were not made to law enforcement, nor do they fall under any other category of testimonial hearsay identified by the Supreme Court.  Because these statements were not testimonial, their admission was not barred by the Confrontation Clause.  Although co-defendant Samora did not testify, there is no *Bruton* problem, as these statements were not a confession within the meaning of that case,

6

nor were they testimonial. Also, even if his Confrontation Clause rights were violated, petitioner has not shown prejudice, as the above recitation of the other evidence indicates. Accordingly, petitioner's claim is DENIED.

**2.     Alleged Prosecutorial Misconduct**

This claims relates to the admission of gang-involvement evidence. At trial, the evidence showed that the four perpetrators were each members of one of two sister Norteno street gangs, the VNC or the VMF.[2] Diaz was a founding member of the VNC, of which petitioner and Samaro were also members, while Herrera was a member of the VMF. Gang graffiti was found on the walls of the co-perpetrators' residence, including "VMF" and "VNC" (Ans., Ex. 14 at 10).

The prosecutor presented evidence of a criminal gang murder, the "Olinder Park murder," committed by the VMF and the VNC, a murder with which Diaz, though not the other three, was directly associated. Such evidence was presented to show that the two gangs worked together, as they had in the Martinez robbery. The defense objected to the evidence, and offered to stipulate that the VMF and the VNC were street gangs. The trial court rejected the proposal, and admitted the evidence with an instruction that the jury regard it only as evidence of gang activity (*id.* at 24–25). Petitioner asserts that such evidence was prejudicial because the jury would have felt compelled to convict petitioner because of his association with Diaz and the gangs.

The state appellate court found the evidence relevant, and rejected petitioner's claim. More specifically, it found that the evidence was relevant to show (1) that the gangs committed predicate crimes together, like the Martinez robbery, (2) why Martinez had reason to fear retaliation because he had reported Diaz to the police his suspicions regarding Diaz's involvement with the Olinder Park murder; and (3) why the police were surveiling Diaz and could apprehend him and the others so soon (*id.* at 27).

---

[2]   Varrio Norte Catorce and the Varrio Meadow Fair gangs.

7

1   The admission of evidence is not subject to federal habeas review unless a specific
2 constitutional guarantee is violated or the error is of such magnitude that the result is a
3 denial of a fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197
4 F.3d 1021, 1031 (9th Cir. 1999).

5   Petitioner's claim fails. As an initial matter, petitioner has not alleged that a specific
6 constitutional guarantee was violated, other than due process. As to the issue of due
7 process, it was reasonable for the state appellate court to determine that the evidence was
8 relevant to show a link between the gangs and criminal activity, and to provide
9 corroboration for Martinez's testimony. Because the evidence is highly relevant, and
10 because federal habeas courts must accord deference to state court determinations,
11 petitioner has not shown that the evidence was more prejudicial than probative. Such
12 determination defeats any claim that the prosecutor's presentation of such evidence
13 rendered the trial fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 181
14 (1986). Third, even if the evidence was prejudicial, the Supreme Court "has not yet made a
15 clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due
16 process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568
17 F.3d 1091, 1101 (9th Cir. 2009). Accordingly, the claim is DENIED.

### 3. Gang Enhancement

19   The jury found true an allegation under Cal. Penal Code § 186.22 that petitioner
20 committed the offenses for the benefit of, or in association with, a criminal street gang.
21 Petitioner claims that there was insufficient evidence to support this finding. The state
22 appellate court rejected this claim, citing strong evidence of gang involvement:

> The record discloses that in early May 2003, Martinez informed Diaz's parole officer and a San Jose police officer that Diaz may have been involved in a recent gang-related murder. He had already told Diaz's mother that he did not want Diaz around anymore. Around 12:40 p.m. on May 9, 2003, defendants, who are VMF and VNC gang members, left a gang hangout with Diaz, a founding VNC gang member. They drove to Martinez's apartment, where they suspected they would find methamphetamine, and defendants [petitioner] and Samaro entered the apartment while Herrera parked the car nearby, leaving the engine running, and watched the apartment. Samaro entered the apartment holding a shotgun and then cocked it and pointed it at Martinez, and [petitioner] pointed a pellet gun at Martinez. Diaz told

> Martinez to lie on the floor, and said that they were not there for Martinez's money but to teach him a lesson. When Martinez escaped, Diaz and [petitioner] took a safe that may have belonged to Diaz's mother and 55.8 grams, or around two ounces, of methamphetamine from the apartment and returned with their loot to Herrera's car. The methamphetamine was worth between $600 and $2000. When Samaro joined them in the car, they all drove back to their gang hangout and took the safe and methamphetamine inside. Shortly thereafter, Samaro and Herrera left the gang hangout with the methamphetamine. Diaz later claimed that, if Martinez had not escaped, he would have been shot. Diaz also said that he was hoping to sell the methamphetamine that they took from Martinez

(Ans., Ex. 14 at 29–30). The jury also heard testimony from two gang experts, who testified that gangs often retaliate against any person who disrespects the gang or a gang member (*id.* at 30.)

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Indeed, if confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324.

The elements of the enhancement (Cal. Penal Code § 186.22(b)(4) ("Participation in criminal street gang")) are: "(1) the crimes charged were committed for the benefit of, at the direction of, or in association with a criminal street gang; and (2) these crimes were committed with the specific intent to promote, further, or assist in any criminal conduct by gang members."

9

The state court reasonably concluded that there was sufficient evidence to support the gang enhancement finding. Evidence was presented that showed that (1) all four perpetrators were gang members, including that gang insignia at their residence and the testimony of Martinez, (2) the two gangs committed crimes together, and (3) the motive for the crime was retaliation for being a snitch on the gang, and for financial benefit. From such evidence, a rational juror could find the elements of the enhancement true. Accordingly, this claim is DENIED.

**4.     Jury Instruction and Assistance of Counsel**

Petitioner claims that the trial court violated his right to due process by failing to instruct the jury that it had to be unanimous as to which acts constituted the aggravated assault. More specifically, petitioner claims that the jury had to agree whether the predicate act was his shoving a pistol in Martinez's face, or when he had a fistfight with him. Petitioner further claims that defense counsel rendered ineffective assistance for failing to request such an instruction. The state appellate court rejected both claims (Ans., Ex. 14 at 34 & 36).

Petitioner's claims fail. Due process does not require that the jury agree as to the specific acts that constituted commission of the crimes charged. The Supreme Court has held that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackman, J, concurring); *see also Schad v. Arizona*, 501 U.S. 624, 631–32 (1991) (rule that jurors not required to agree upon single means of commission of crime, citing *McKoy*, applies equally to contention they must agree on one of the alternative means of satisfying mental state element of crime). Petitioner, then, has not shown that the trial court violated his right to due process. Because no unanimity instruction was required, petitioner has not shown that defense counsel's performance was deficient, or that such performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, petitioner's claims are DENIED.

10

**5.      Sentence**

Petitioner claims that the trial court should have stayed the assault count under Cal. Penal Code § 654 because the robbery and the assault were not separable offenses, but were part of one course of conduct. The state appellate court rejected this claim on state law grounds (Ans., Ex. 14 at 43). Petitioner attempts to turn this state law claim into a federal claim by alleging that the sentence violates the Fifth Amendment's bar on multiple punishments for the same offense. The crimes have entirely different elements, and cannot plausibly be called duplicative of each other. Petitioner's claim is, in truth, a matter of state sentencing law. Violations of state law are remediable on federal habeas review, even if state law were erroneously interpreted or applied. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861–62 (2011). Accordingly, petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: April  25 , 2012

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE